## CHARLES H. BANNER v. THE WABASH RAILROAD COMPANY, Appellant.

**Railroads:** COLLECTION OF UNAUTHORIZED FREIGHT CHARGES: RECOVERY BACK: JURISDICTION. The state courts have jurisdiction of an action to recover back of a railway company, a charge for freight exacted on a car of stock shipped into this state, which was in excess of the schedule of rates printed and posted and filed with the interstate commerce commission.

DEEMER, J., in a concurring opinion.

*Appeal from Page District Court.*—HON. A. B. THORNELL, Judge.

SATURDAY, JULY 14, 1906.

The plaintiff shipped a car load of goods, farming utensils and stock over the defendant's road from Salisbury, Mo., to Shenandoah, Iowa. It was what is known as an "emigrant car," the agreed charge for which between said points was $39. The rules of the defendant fixing the rate for such cars limited the number of head of stock to be shipped in one car to ten, and provided that the freight charge on animals in excess of said number should be at the rate of 60 cents per hundred, and established an arbitrary weight on which the computation should be made. The plaintiff loaded sixteen head of cattle in the car, six of them being calves weighing about three hundred pounds each, and after the car reached its destination and before he was permitted to remove his property therefrom he was compelled to pay the car load price of a car of stock between said points in addition to the charge for an emigrant car. He brought this suit to recover the amount so paid. There was a trial to the court, and a judgment for the plaintiff, from which the defendant appeals. *Affirmed.*

*Geo. S. Grover* and *Jennings & Fisher,* for appellant.

*W. P. Furgeson,* for appellee.

PER CURIAM.— The defendant contends that this is an action to recover under the provisions of the interstate commerce act, and that the state courts have no jurisdiction of the subject-matter. The shipment itself was undoubtedly an interstate transaction, and if this suit were brought to recover for a violation of the commerce act the appellant's position would be correct. Act Feb. 4, 1887, 24 Stat. 382 [U. S. Comp. St. 1901, 3159]; *Swift v. Railway* (C. C.) 58 Fed. 858; *Copp v. L & N. Ry. Co.* 43 La. Ann. 511, (9 South. 441, 12 L. R. A. 725, 26 Am. St. Rep. 198); *Gulf, C. & S. F. Ry. Co. v Hefley & Lewis,* 158 U. S. 98, (15 Sup. Ct. 802, 39 L. Ed. 910); *Gatton v. C., R. I. & P. Ry. Co.,* 95 Iowa, 112.

The primary question is whether the defendant demanded and collected a greater sum than was authorized to charge by its schedules of rates and fares printed, posted and filed with the interstate commerce commission; if it did, the plaintiff is entitled to recover and the court had jurisdiction because the suit is not to recover an overcharge under the commerce act, but to recover back a wholly unjust and unauthorized exaction, one demanded and collected, not only in violation of the act itself, but in violation of the contract made with the plaintiff. The additional charge was exacted because of the six calves which were carried in the car in addition to the ten head of cattle provided for by rules of the defendant. The weights fixed by defendant to justify the charge were purely arbitrary, and so far as the schedules or classifications produced in evidence are understood by us, there is nothing therein authorizing a charge for such arbitrary weight. The car was in fact overloaded to the extent of 1,400 pounds. This was in excess of the weight allowed for the rate fixed, and when the plaintiff paid the freight in

the first instance he paid for such excess weight the highest schedule charge for merchandise, such charge being higher than for stock by car load lots, as we understand the record. The plaintiff having paid the exact amount demanded for the actual weight of the car under the provision of the schedule as construed by the defendant itself, it should not now be permitted to place another construction on such schedule for the purpose of collecting the price of another car. If the facts are as we understand them the situation may be stated thus: The defendant collected in the first instance all that it had the right to demand under its schedule as it had classified the load, and which classification seems to be somewhat elastic. A failure to collect more would not have been violation of the interstate commerce act, and the payment of the additional sum exacted and its recovery back have nothing to do with such act.

The judgment is *affirmed.*

DEEMER, J.— (concurring). I agree to the conclusion of the majority, but I do so upon the ground that the railway company was attempting to enforce a penalty against the shipper for overloading a car rather than a schedule rate for shipping goods. The witnesses for defendant say that the arbitrary charge was intended as a penalty for overloading an emigrant car, and not as the schedule rate for shipping the goods. But for the alleged overloading no such charges as were attempted here would have been exacted. There is no pretense that there was any collusion between defendant's agent in Missouri and plaintiff, nor was there any purpose upon the part of either to avoid the interstate commerce act. The railway company, in exacting the additional charge, was attempting to enforce a penalty for overloading, and not trying to collect its schedule rate for shipping cattle. No question of discrimination is before us. It is this which distinguishes the case from *Texas Co. v. Mugg* (U. S.) 26 Sup. Ct. 628, 50 L. Ed. 1011.